IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 23, 2001 Session

## SANDRA ALLMAN v. HUT'S, INC.

**Direct Appeal from the Circuit Court for Gibson County**
**No. 7525; The Honorable Mark Agee, Judge**

_____

**No. W2000-01829-COA-R3-CV - Filed May 16, 2001**

_____

This appeal arises from the alleged fall of the Appellant outside the Appellee gas station and convenience store. The Appellant brought a complaint against the Appellee in the Circuit Court of Gibson County, alleging that the Appellee negligently maintained its premises which was a proximate cause of the Appellant's injuries. The Appellee filed a motion for summary judgment, alleging that the Appellant was unable to prove that the Appellee owed a duty to the Appellant or breached a duty. The trial court granted the Appellee's motion for summary judgment.

The Appellant appeals the grant of summary judgment in favor of the Appellee by the Circuit Court of Gibson County. For the reasons stated herein, we reverse the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Jason G. Whitworth, Covington, for Appellant

Deana C. Seymour, Michael L. Mansfield, Jackson, for Appellee

**OPINION**

### I. Facts and Procedural History

Victoria and Walter Gray ("the Grays") are the owners of the Appellee gas station and convenience store, Hut's, Inc. ("Hut's"), located in Rutherford, Tennessee. On July 2, 1997, the Appellant, Sandra Allman ("Ms. Allman") was a patron at Hut's with two traveling companions, Jack Blair ("Mr. Blair") and Linda Battle ("Ms. Battle"). Ms. Allman claims that she caught her foot on a descending concrete curb outside Hut's and fell which resulted in injuries to her right leg, hip, back, and head.

On December 21, 1998, Ms. Allman filed a complaint against Hut's for compensatory damages as a result of personal injuries and for other special damages. Ms. Allman alleged that Hut's negligently maintained its premises which was a proximate cause of her injuries. Depositions of Ms. Allman, Mr. Blair, Ms. Battle, and the Grays were taken on January 20, 1999. Ms. Allman testified by deposition that she recalled traveling on July 2, 1997, from Union City to Jackson with Ms. Battle and Mr. Blair and eating at Ryan's restaurant in Jackson. Ms. Allman stated that she had no memory of any events that transpired after leaving Ryan's restaurant. Ms. Allman did not recall the alleged fall at Hut's. Ms. Allman testified that her next recollection was waking up at her home the evening of July 2, 1997, or the early morning of July 3, 1997.

Mr. Blair testified by deposition that he was present at the scene of the alleged fall. Mr. Blair testified that Ms. Allman was standing outside his car window at Hut's. Mr. Blair stated that he then moved his car and that the next time he saw Ms. Allman she was lying on the ground. Mr. Blair testified that he did not see Ms. Allman fall nor did he know what caused her to fall. Likewise, Ms. Battle testified by deposition that she was present at the scene of the alleged fall. Ms. Battle stated that she did not see Ms. Allman fall but that she saw Ms. Allman inside Hut's after the alleged fall.

The Grays both testified by deposition that Hut's was constructed during late 1989 and early 1990 in accordance with an architect's designs and passed all state inspections. The parking lot and sidewalks had not been altered since that time. The Grays both admitted that there were no signs or paint indicating the step up to the curb; however, they stated that it was obvious there was a curb there. Mr. Gray testified that the curb was raised three inches above the lower surface. The Grays both testified that they inspect the premises for defects or dangerous conditions once or twice a week in order to repair such conditions. Mrs. Gray testified that she was aware of only one other incident involving a customer tripping outside Hut's in the nine years that Hut's had been in operation.

On May 10, 1999, Hut's filed a motion for summary judgment based on the fact that Ms. Allman could provide no evidence concerning the causation of her alleged fall. Ms. Allman then filed an affidavit in which she stated that following her deposition, she had recalled the events of July 2, 1997 more clearly. Ms. Allman stated that she fell by catching her foot on a small curb located at Hut's. In Ms. Allman's supplemental deposition, Ms. Allman identified the area of Hut's sidewalk on which she allegedly tripped more specifically as being a point in front of Hut's where the sidewalk slopes down to ground level, similar to a handicapped ramp. Ms. Allman stated that she stepped up onto a raised, concrete sidewalk, or island, extending perpendicular to the front of Hut's. Ms. Allman stated that she then stepped down off the island, took two or three steps towards the front of Hut's, and caught her right foot on a small curb. The only explanation Ms. Allman made for her failure to see the sidewalk was that "it kind of like fades. See, it kind of like fades into it. I don't know what the difference is, but it does not – It's not distinguished like this one is. I don't know."

On November 8, 1999, Hut's filed a supplemental memorandum in support of its motion for summary judgment. Hut's presented the following two arguments: (1) Ms. Allman's deposition testimony of January 20, 1999 was inconsistent with her affidavit and subsequent deposition

testimony such that the evidence should cancel each other out and there would remain no proof of causation; and (2) Ms. Allman was unable to prove that Hut's owed a duty to Ms. Allman to warn her of the sidewalk or breached its duty to maintain the sidewalk in a reasonably safe condition. Ms. Allman filed a response in opposition to Hut's supplemental memorandum on December 10, 1999. Ms. Allman argued that there was a large Hut's sign over the front of the building, newspaper machines, and an ATM machine which drew the attention of the patrons. Following a hearing on June 19, 2000, the trial court rejected Hut's argument concerning the admissibility of Ms. Allman's affidavit but granted Hut's motion for summary judgment because "from the evidence that's been presented, the Court does not find a prima facie case of any unreasonably dangerous condition. The ramp is open and obvious. Reasonable care of any patron would easily detect its presence." This appeal followed.

## II. Law and Analysis

The first issue presented for our review is whether the trial court erred by granting summary judgment in favor of Hut's. The standards governing an appellate court's review of a trial court's grant of summary judgment are well settled in Tennessee. See Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995). Summary judgment is to be rendered by a trial court "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04 (2000). In ruling on a motion for summary judgment, the trial court and the appellate court must consider the matter in the light most favorable to the nonmoving party and must allow all reasonable inferences in the nonmoving party's favor. See Carvell, 900 S.W.2d at 26; Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993).

The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. See Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997); Downen v. Allstate Ins. Co., 811 S.W.2d 523, 524 (Tenn. 1991). Once the moving party satisfies that burden, the burden then shifts to the nonmoving party to set forth specific facts establishing that there are disputed, material facts creating a genuine issue to be resolved by the trier of fact. See Byrd, 847 S.W.2d at 215. In appeals from grants of summary judgment, the appellate court must decide whether the trial court correctly applied Rule 56. See Hill v. Chattanooga, 533 S.W.2d 311, 312 (Tenn. Ct. App. 1975). The appellate court must make an entirely fresh determination because only questions of law are presented; no presumption of correctness accompanies the trial court's decision. See id.

This court has recognized that, as a general rule, a defendant moving for summary judgment may avail itself of two avenues: (1) the defendant "may negate an essential element of the nonmoving party's claim," or (2) the defendant "may establish an affirmative defense, such as the statute of limitations, that defeats the claim." Allied Sound, Inc. v. Neely, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995) (citing Byrd, 847 S.W.2d at 215 n.5 (Tenn. 1993)). In this case, Hut's sought to obtain a summary judgment by the first avenue, that of negating an essential element of Ms. Allman's claim for negligence. In a negligence action, a plaintiff is required to prove five elements:

(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to the breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. See Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000) (citing White v. Lawrence, 975 S.W.2d 525, 529 (Tenn. 1998); McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)).

The first element in a negligence claim, duty, is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." McCall, 913 S.W.2d at 153. Courts must apply a balancing approach based upon principles of fairness to determine whether the risk to a plaintiff was unreasonable and gives rise to a duty to act with due care. See Staples, 15 S.W.3d at 89 (citing Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997)). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." McCall, 913 S.W.2d at 153 (citing RESTATEMENT (SECOND) OF TORTS § 291 (1964)). The court must consider several factors in determining whether the risk is unreasonable, including:

> the foreseeable probability of the harm or injury occurring;
> the possible magnitude of the potential harm or injury; the
> importance of social value of the activity engaged in by
> defendant; the usefulness of the conduct to defendant; the
> feasibility of alternative, safer conduct and the relative
> costs and burdens associated with that conduct; the relative
> usefulness of the safer conduct; and the relative safety of
> alternative conduct.

Id. (citing RESTATEMENT (SECOND) OF TORTS §§ 292, 293 (1964)).

Whether the defendant owed a duty of care to the plaintiff is a question of law for the court. See Blair v. Campbell, 924 S.W.2d 75, 78 (Tenn. 1996).

In cases involving premises liability, the premises owner has a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises. See Eaton v. McClain, 891 S.W.2d 587, 593-94 (Tenn. 1994). This duty is based upon the assumption that an owner has superior knowledge of any perilous condition that may exist on the property. See Kendall Oil Co. v. Payne, 293 S.W.2d 40, 42 (Tenn. Ct. App. 1955). Traditionally, liability was not imposed on a premises owner by courts of this state for injuries that resulted from defective or dangerous conditions that were open and obvious. See McCormick v. Waters, 594 S.W.2d 385, 387 (Tenn. 1980); Kendall, 293 S.W.2d at 42. However, the Tennessee Supreme Court restricted this rule of law in Coln v. City of Savannah, 966 S.W.2d 34 (Tenn. 1998). The Coln court held:

> That a danger to the plaintiff was "open or obvious" does not,
> *ipso facto*, relieve a defendant of a duty of care. Instead, the

duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343A relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if "open and obvious," outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

Id. at 43.

Thus, a premises owner may owe a duty to visitors if the owner can anticipate the harm, even if a hazard is open and obvious. "Such reason to expect harm to a visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the [visitor's] attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Jackson v. Bradley, 987 S.W.2d 852, 854 (Tenn. Ct. App. 1998) (quoting RESTATEMENT (SECOND) OF TORTS, § 343A cmt. f).


The duty of a premises owner includes the obligation either to remove or warn against any latent, dangerous condition of which the owner is aware or should be aware through the exercise of reasonable diligence. See Eaton v. McClain, 891 S.W.2d 587, 594 (citations omitted). "The duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against 'conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care.'" Rice v. Sabir, 979 S.W.2d 305, 308-09 (Tenn. 1998) (quoting W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 61, at 426 (5th ed. 1984)). In addition, "'the plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.'" Eaton, 891 S.W.2d at 594 (quoting Doe v. Linder Constr. Co., 845 S.W.2d 173, 178 (Tenn. 1992)). If liability is to be predicated on the defendant's constructive knowledge, the proof must show the dangerous or defective condition existed for such a period of time that the defendant knew or, in the exercise of ordinary care, should have known of the condition. See Allison v. Blount Nat'l Bank, 390 S.W.2d 716, 719 (Tenn. Ct. App. 1965).


We find that Hut's owed a duty of care to Ms. Allman under the facts in the case at bar. The three inch, unmarked curb created a foreseeable probability of harm. The curb was located in front of the main entrance to Hut's where Hut's invited and expected patrons to enter and exit. The Grays had actual knowledge of the curb as they had participated in designing the parking lot and performed routine inspections. There was a large Hut's sign, newspaper machines, and an ATM machine in front of Hut's that Ms. Allman argued drew the attention of patrons away from the curb.

Having determined that a duty of care was owed to Ms. Allman, we believe the trial court erred in granting the motion for summary judgment in favor of Hut's. The pertinent questions now become whether Hut's breached its duty, and if so, whether that breach caused Ms. Allman's injuries. Issues of breach and causation are generally questions decided by the trier of fact. See Kelley v. Johnson, 796 S.W.2d 155, 157 (Tenn. Ct. App. 1990). These questions become questions of law, however, when the facts and inferences drawn therefrom permit reasonable persons to reach only one conclusion. See id. Our review of the record leads us to conclude that reasonable minds could differ on the pertinent questions; therefore, we must reverse the grant of summary judgment in favor of Hut's. The case is remanded to the trial court so that Ms. Allman may have the opportunity to present her evidence of Hut's negligence. We express no view on the remaining elements of Ms. Allman's negligence claim.

The second issue presented for our review is whether the trial court erred in considering Ms. Allman's affidavit on the issue of causation. Hut's argues that the Ms. Allman's January 20, 1999 deposition was inconsistent with her affidavit and subsequent deposition testimony such that the evidence "cancelled out," leaving no proof of causation. It is a well settled rule in Tennessee that contradictory statements of a witness in connection with the same fact "cancel each other out." See Taylor v. Nashville Banner Publ'g Co., 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978) (citations omitted). Nevertheless, "prior inconsistent statements may be explained, and such inconsistencies go only to the weight to be given to a witness's testimony." Baxter v. Vandenheovel, 686 S.W.2d 908, 911 (Tenn. Ct. App. 1984) (citing Sikes v. Tidwell, 622 S.W.2d 548, 551 (Tenn. Ct. App. 1981)). Thus, we find that the trial court correctly held that Ms. Allman's subsequent testimony and explanation of where she fell would not affect admissibility, but went only to the weight to be given at trial.

### III. Conclusion

For the foregoing reasons, we reverse the decision of the trial court granting summary judgment in favor of Hut's. We remand this case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed against the Appellee, Hut's, Inc., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE